## HAYES *v.* TABOR.

41  521
o69  215

If land is devised to A. and his heirs forever, upon the uses, trusts, and conditions that A. shall permit Mary and John to use, occupy, and enjoy the same during their lives and the life of the survivor, and after the death of both Mary and John, that one half of the same shall be to the use of Harriet forever, and the other half to the use of Lydia for life, and after the death of Lydia, to the use of Lydia's children forever;

This devise conveys to A. no estate in trust, but an estate to a use merely;

The equitable estate devised to Harriet and the children of Lydia, should it ever vest in them, would descend to their heirs;

The several *cestuis que use* have thus an equitable estate of equal duration with the legal estate devised to A.;

A. will take no estate by this devise, because the statute of uses in force in this State will execute the use, so that the legal estate, as well as the equitable, will vest in the *cestui que use;*

The remainder to Lydia, during the life of John (Mary being dead), is only contingent;

The remainders to Lydia's children, during the life of John and Lydia, are doubly contingent;

Lydia's children (Lydia being dead) can have only a contingent remainder, and no estate of inheritance vests in them during the life of John;

Deeds of the land from Lydia's children, in John's lifetime, convey no title to the premises;

But such of Lydia's children as are of age, and have conveyed with warranty, will be estopped from claiming the land, should it ever become vested in them;

While those who, being minors, conveyed by guardian, will not be thus estopped, but may claim and hold their estate, should it ever become vested, against the deeds of their guardians.

IN EQUITY. The bill alleges that one Job Tabor, formerly of Portsmouth, deceased, died, leaving a homestead farm in said Portsmouth; that the said Job devised said farm to one John L. Elwyn, in trust, for the use of his, the said Job's, wife, now deceased, and one John Tabor, for and during the term of their natural lives, and the life of the survivor of them, and after their decease, to his daughter Lydia, for her natural life, and then to the heirs of Lydia and one Harriet Tabor;

That said John Tabor has only a life estate in said farm; that said trustee neglected and refused to accept said trust; and said John Tabor has always occupied and carried on said premises since the death of the wife of said Job Tabor, and had the use thereof; that said Lydia was the wife of one William Beck, and that she is now dead; that the orator, Charles Hayes, purchased of the heirs of said Lydia Beck, in May, 1855, all their right, title, and interest in and to said farm under said will, it being the reversion of one half of all said farm, and that said Hayes has, since 1855, held, and now holds all the right, title, &c., by deeds duly executed and recorded from said heirs, to the reversion of one half of said farm, after the death of said John Tabor:

That said John Tabor and the other defendants, all acting by directions from and under the authority of said John Tabor, had been and were cutting wood on said farm, for the purpose of selling the same; that they had cut and sold from said farm a large lot of cedar posts, and had dug up and carried away large quantities of muck or mud from said farm, and in various ways had committed, and were committing, strip and waste thereon; and though notified by said Hayes of his title, and requested to desist, they refused so to do, but claimed that, under said Tabor, they had a right to do these acts, and that the orator had no rights there until after the death of said John Tabor.

The orator charges the contrary of this to be true, and

claims the right to interfere, and put a stop to such strip and waste.

The bill prays for an answer; for an account; for an injunction to restrain waste during said tenancy for life, and for other relief.

The defendants have filed answers at length, but it becomes unnecessary to state the particulars of them, as the following agreement has stated the points to be settled, and such facts stated in the answers as are material will be stated in the opinion. The parties have agreed as follows:

"It is hereby agreed that this cause shall be submitted upon the bill and the answers; and that the only questions for the determination of this court are whether the complainant has such a title as will enable him to maintain this bill, the only title he claims being under the will of the late Job Tabor, and the deeds set forth in the bill, which deeds, it is agreed, were duly executed, and are truly set forth therein; and it is further agreed that said John Tabor did cut the wood and timber, and do the other acts charged in complainant's bill, and that damages, not to exceed ——— dollars, for the alleged waste, may be decreed against said John Tabor, provided said court shall decide that complainant has sufficient title in the premises to enable him to maintain this bill."

*Goodall,* for the plaintiff.

*Hoyt,* for the defendant.

SARGENT, J. It appears that the second item in the last will and testament of Job Tabor was as follows: "I give, bequeath, and devise to John Langdon Elwyn, of said Portsmouth, Esquire, and his heirs forever, the dwelling-house and farm where I now live, and all the residue and remainder of my property, real and personal, wherever the same may be situated, to and upon the following uses,

trusts, and conditions, that is to say; that he permit my beloved wife and my son John to use, occupy and enjoy the same during their natural lives, and the survivor of them, for and during his or her natural life, and after the termination of both their natural lives, that the same be one moiety thereof to the use and enjoyment of my daughter Lydia, for and during her natural life, and after the termination of the said Lydia's natural life, that the said moiety be to the use of my said daughter Lydia's children forever; and that the other moiety be to and for the use of my adopted daughter, Harriet Tabor, who now resides in my family, forever."

It also appears from the bill and answers that the testator's widow, Mary Tabor, is dead; that said John Tabor is in possession of said farm, and has been since the death of the testator, and ever has used, and still does " use, occupy, and enjoy the same;" that said Lydia was the wife of one William Beck, and is now dead, having left four children and heirs, Elizabeth T., James W., Lydia A., and Lyman H. Beck, of whom the two former were of age, and the two latter were minors, in May, 1855, when they all, the first by deeds of warranty, and the last by their guardian, conveyed all their right, title, and interest in said farm, under the will of said Job Tabor, to this plaintiff, which are the deeds referred to by the parties in their agreement.

The answers allege that there are other parties who must be joined, before the plaintiff could have any decree or judgment, to wit, some one as successor to and in the place of said Elwyn, as trustee, and also one Harriet Dennett, only daughter and heir of said Harriet Tabor, who is now dead, who claims an interest in said farm; and the defendant takes the further position, that the children of said Lydia had no title to said farm, during the lifetime of said John Tabor, the defendant, and that the plaintiff, of course, has no title, and cannot maintain this bill.

The plaintiff takes the following positions; namely, (1) Elwyn, had he accepted the estate devised, would have had a fee-simple, so that after the death of John, Mary, Lydia, and Harriet, he would have held the whole; or (2) that Elwyn was the mere trustee during the life of John and Mary, and that then the estate would vest in Lydia and Harriet, and their heirs, forever; or (3) that Elwyn was to be trustee during the lives of all the persons mentioned, and then the estate to revest in the heirs of Job Tabor, as if unbequeathed.

But we think neither of the positions assumed by the plaintiff can be correct. Neither is it necessary to have any other parties to the bill, as the defendant claims. In the views we take of this devise, it could make no difference whether Elwyn did or did not accept the trust. If he had accepted it, he could have had no estate in the land. The devise is, in terms, to him upon certain uses and trusts, and the first thing to ascertain is whether the estate conveyed is in fact a *trust*, or simply a *use*.

We find that the uses, trusts, and conditions specified are, that the widow and John are to have the use, occupancy, and enjoyment of the premises for their lives and the life of the survivor; after their decease, then one half to the use and enjoyment of Harriet Tabor forever, and the other half to the use and enjoyment of Lydia Tabor, for life, and after her decease, to the use and enjoyment of her children forever. Here no duty is imposed upon the trustee, requiring him to do any act for which the seizin and possession of the legal estate are necessary; nor is there any duty imposed, calling for the exercise of any discretion on his part, but he is simply to permit these several *cestuis que trust*, or *use*, to use, occupy, and enjoy the premises. There is absolutely nothing for the trustee to do, during the continuance of any of these terms for life, nor is there any opportunity for him to exercise any discretion. He has only to permit the several individuals

named to use, occupy, and enjoy the premises. The possession is, in all cases, to be in the *cestuis que use.*

The devise, then, is to certain *uses*, merely; there is no trust about it. And, in such cases, the statute of uses, which is in force in this State, executes the use; and the legal estate, by force of said statute, vests in the *cestuis que use.*

The uses thus all becoming executed, and the legal estate vested in the several *cestuis que use*, for the time being, Elwyn would have taken neither an equitable or a legal interest in the estate, had he accepted the trust; but John Tabor would have had, as he now has, a life estate, and Lydia and her children, and Harriet, stand as though the estate had been devised to them after the decease of John, without the intervention of any trustee. *French* v. *French*, 3 N. H. 224; Bac. Abr. Uses and Trusts, D; *Broughton* v. *Langley*, 2 Ld. Raym. 873; *New Parish in Exeter* v. *Odiorne*, 1 N. H. 232; *Upham* v. *Varney*, 15 N. H. 462.

A *quære* may arise, whether it was not the intention of the testator to convey merely a life estate to Harriet Tabor, and the children of Lydia, by the words used in the devise, and a fee to Elwyn and his heirs, subject to all the life estates first carved out of it? To be sure, the words of the devise are to Elwyn and his heirs forever, &c., while the devise to Harriet and the children of Lydia is merely forever, without the use of heirs, or any other words of inheritance. In a deed, the former description would convey a fee, and the latter only a life estate; but in a will, we are to gather the intention of the testator from all parts of the instrument, and if it appear in this way that the testator intended to give a fee, or that his general intent cannot be carried into effect without construing the devise as giving a fee, a fee will pass without any words of inheritance. *Fogg* v. *Clark*, 1 N. H. 163; *McAfee* v. *Gilmore*, 4 N. H. 371; *Ladd* v. *Harvey*, 21 N. H.

514; *Wells* v. *Tyler*, 25 N. H. 340; *Hall* v. *Hall*, 27 N. H. 275.

The testator may well have supposed that Elwyn would not himself live till the termination of all the life estates he had created, and hence the insertion of the word heirs in that connection. We cannot fail to conclude that the testator knew very well the difference between a life estate and a fee, in fact, though he may not have fully understood the use of the technical terms usually employed by conveyancers, in describing these different estates. He had just been devising life estates to his widow, to John, and to Lydia, with great particularity, and had he designed only to give the same kind of an estate to Harriet and the children of Lydia, he would have been very likely to have described their estates in the same way, and with the same particular limitations as he had the others. But we find him, after having described several estates as being for and during the natural life of the devisee, finally devising the remainder to Harriet and the children of Lydia forever. There would seem to be little doubt that he intended to devise a fee, subject to the previous life estates.

So, then, there would be nothing left, in any event, to the trustee, after the termination of the estates of the several *cestuis que use ;* their equitable estates being coextensive in duration with his, being estates of inheritance like his; and these uses being executed as we have seen, the legal title vests in the *cestuis que use ;* so that it is a matter of no sort of consequence whether Elwyn ever accepted the trust or not; it could not have made any difference in the result.

It will be observed that the remainders in this devise are not to take effect or commence upon the termination of the life estate upon which they are dependent, but only upon the termination of the natural life of the person having the life estate. If the devise were in the first form designated, that is, to Mary and John, for their lives and

the life of the survivor, with remainder over to Lydia for life, with remainder over to her children forever, &c., then whenever the life estate terminates the remainder takes effect, no matter whether the person who had the life estate be living or dead. In such case, the person having the remainder has a certain interest, depending on no contingency, and hence a vested remainder. *McAfee* v. *Gilmore*, 4 N. H. 391.

But here the devise is to Mary and John for life, &c., and after the termination of both their natural lives, remainder to Lydia, &c., and after the termination of the natural life of Lydia, remainder to her children, &c. Under this devise, as Lydia could not take her estate until after the termination of the natural life of Mary and John, if the life estate of John, the survivor, should terminate or be destroyed before his death, as it may, by forfeiture, or by surrender and merger in the inheritance, the remainder, limited to Lydia, could r ever vest in possession in her, though she might have survived John, because from the time when John's life estate should thus terminate to the time of his decease, there would be no particular estate to support the remainder, and, of course, the remainder would fail.

Were Lydia alive, her children's remainder would be liable to fail, also, in the same way, by the termination of her life estate before her death, so that their remainder would, in that case, be doubly contingent or doubtful. But as it is, their remainders are contingent, depending upon the fact as to whether John's life estate shall terminate before his death, which we have seen may happen. The children of Lydia had not, at the time they conveyed to this plaintiff, and have not now, any thing more than this uncertain or contingent interest. *Hall* v. *Nute*, 38 N. H. 424, would seem to be a case in point.

Now, it is well settled that a contingent remainder does not pass by deed, nor by extent of an execution. "A

contingent remainder is not an interest that can be conveyed by deed, operating at the time of the conveyance on an existing estate, or that can be taken for debt under legal process." *Robertson* v. *Wilson*, 38 N. H. 51; *Hall* v. *Chaffee*, 14 N. H. 215; *Hall* v. *Nute, ante.*

So, then, as the children of Lydia Tabor had no estate, and have none now, that they can convey to any one, because not vested, but merely contingent and uncertain, therefore their deeds convey to this plaintiff no title or interest, and he cannot maintain this suit.

If John Tabor's life estate should terminate only with his death, then the plaintiff might, perhaps, hold one fourth part of the estate, upon the ground that the two heirs of Lydia, who were of age, have conveyed with warranty, and on the authority of the cases last cited, they might be estopped by these deeds to claim the estate, should it ever become vested in them. But, as to the shares of the two minor children, which have been conveyed by their guardian, they would not probably be estopped to claim the estate whenever it might become vested.

The bill must, therefore, be dismissed with costs.